UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 17-17361 |
| | ) | |
| RICHARD M. OSBORNE | ) | ADVERSARY NO. 20-1013 |
| | ) | |
| Debtor | ) | IN PROCEEDINGS UNDER CHAPTER 7 |
| | ) | |
| | ) | JUDGE ARTHUR I. HARRIS |
| KARI B. CONIGLIO, TRUSTEE | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | ANSWER OF THE DEFENDANTS, |
| RICHARD M. OSBORNE, SR., et al. | ) | DIANE M. OSBORNE, TRUSTEE OF |
| | ) | THE DIANE M. OSBORNE TRUST |
| Defendants | ) | AND OF DIANE M. OSBORNE |

Now come the defendants, Diane M. Osborne, Trustee of the Diane M. Osborne Trust, and Diane M. Osborne as an individual, by and through their attorney, and, for their answer to plaintiff's complaint, state as follows:

**FIRST DEFENSE**

1. Admits the allegations contained in paragraphs 1, 2, 3, 4, 5, 6, 7, and 8 of plaintiff's complaint.

2. Admits the allegations contained in paragraph 9, 10, 11, 12, and 13 of plaintiff's complaint.

3. Admits the allegations contained in paragraphs 14, 15, and 16 of plaintiff's complaint.

4. Denies, for want of knowledge and materiality, the allegations contained in paragraphs 17, 18, 19, 20, 21, 22, 23, and 24 of plaintiff's complaint.

5. Denies the allegations contained in paragraph 25 of plaintiff's complaint.

6. Denies, for want of knowledge, the allegations contained in paragraphs 26, and 27 of plaintiff's complaint except that this defendant admits all matters of public record.

7. Denies, for want of knowledge, the allegations contained in paragraph 28 of plaintiff's complaint.

8. Admits the allegations contained in paragraphs 29 and 30 of plaintiff's complaint.

9. Denies, for want of knowledge, the allegations contained in paragraphs 31 and 32 of plaintiff's complaint.

10. Denies the allegations contained in paragraph 33 regarding absence of creditors and, for want of knowledge, it assets.

11. Denies, for want of knowledge, the allegations contained in paragraph 34.

12. Denies the allegations contained in paragraph 35 of plaintiff's complaint.

13. Admits the allegations contained in paragraph 36 of plaintiff's complaint.

14. Admits the allegations contained in paragraphs 37 and 38 of plaintiff's complaint.

15. Admits that she duly and properly perfected her security interest in 58 shares of stock as alleged in paragraph 39 of plaintiff's complaint. Further answering, her security interest was perfected by filing the financing statement, a copy of which is attached hereto, labeled Exhibit A, and incorporated herein by reference as if rewritten in full, and by possession of the certificates and expressly denies that the security interest in shares by RMO Trust was not properly perfected. Further answering, this defendant states that she did execute on her security interest and is now the owner of the stock as had been owned by the debtor and the debtor's trust.

16. Admits that she extended a second loan to the debtor as alleged in paragraph 40 but denies, for want of knowledge and materiality, the remaining allegations contained in said paragraph.

17. Admits the allegations contained in paragraph 41 that she extended a third loan to the debtor but denies, for want of knowledge and materiality, the remaining allegations contained in paragraph 41 of said complaint.

18. Admits that the debtor and the trust executed replacement notes as alleged in paragraph 42 and that the loan agreements relating to what has been described as DMO loan 1 and DMO loan 2 were modified and extended but denies the remaining allegations contained in paragraph 42 for want of materiality.

19. Admits the allegations contained in paragraphs 43 and 44 of plaintiff's complaint.

20. Denies, for want of knowledge and materiality, the allegations contained in paragraph 45 of plaintiff's complaint.

21. Admits the allegations contained in paragraphs 46, 47, and 48 of plaintiff's complaint.

22. Denies, for want of knowledge and materiality, the allegations contained in paragraph 49 of plaintiff's complaint.

23. Admits the allegations contained in paragraphs 50 and 51 of plaintiff's complaint.

24. Denies, for want of knowledge and materiality, the allegations contained in paragraph 52 of plaintiff's complaint.

25. Admits the allegations contained in paragraphs 53 and 54 of plaintiff's complaint.

26. Denies, for want of knowledge and materiality the allegations contained in paragraph 55 of plaintiff's complaint.

27. Admits the allegations contained in paragraphs 56, 57, 58, 59, 60, 61, and 62 of plaintiff's complaint.

28. Denies, for want of knowledge and materiality the allegations contained in paragraph 63 of plaintiff's complaint.

29. Admits the allegations contained in paragraph 64, 65, 66, 67, and 68 of plaintiffs complaint but denies that a first priority mortgage was the only consideration to be received by the defendants.

30. Denies, for want of knowledge and materiality, the allegations contained in paragraphs 69, 70, 71, 72, 73, and 74 of plaintiff's complaint but admits all matters of public record.

31. Denies, the allegations contained in paragraphs 75 and 76 of plaintiff's complaint.

32. Denies, for want of knowledge and materiality, the allegations contained in paragraph 77 of plaintiff's complaint.

33. Admits that the mortgage of Diane Osborne was released as a result of a tax foreclosure sale but denies, for want of knowledge and materiality, the balance of the allegations contained in paragraph 78 of plaintiff's complaint.

34. Denies the allegations contained in paragraph 79 and affirmatively states that she took active steps to protect and secure the obligations owing to her from the debtor.

35. Deniss the allegations contained in paragraph 80 of plaintiff's complaint.

36. Denies, for want of knowledge and materiality, the allegations contained in paragraph 81 of plaintiff's complaint regarding the debtor's desires relating to the February, 2016 agreement.

37. Denies the allegations contained in paragraph 82 but admits all matters of public record.

38. Admits the allegations contained in paragraph 83 of plaintiff's complaint.

39. Denies the allegations contained in paragraphs 84 and 85 of plaintiff's complaint.

40. Denies that no independent records were kept by these defendants but admits that her accountant would adjust the balances based upon the records supplied to him by the debtor and by Diane Osborne as alleged in paragraph 86.

41. Admits the allegations contained in paragraphs 87 and 88 of plaintiff's complaint.

42. Admits that, at the time of the execution of the subordination agreement, the debtor was insolvent but affirmatively states that Rigrtona Holding Inc. was not insolvent and denies that perfection occurred as alleged by plaintiff and denies that, at the actual date of the perfection of the trust security interest in the Osborne Inc. shares, the debtor was insolvent as alleged in paragraphs 89 and 90 of plaintiff's complaint.

43. Admits that the schedules set forth values as alleged in paragraph 91.

44. Admits that the debtor has not paid his debts to this creditor as required and apparently, according to public records, was not paying other creditors as their debts became due as alleged in paragraph 92 of plaintiff's complaint but denies that such condition existed at all relevant times.

45. Admits that, if said creditors are in existence and were in existence at the time of an alleged fraudulent or preferential avoidance action, such creditors would have standing as alleged in paragraph 93 of plaintiff's complaint.

46. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 94 of plaintiff's complaint.

47. Denies, for want of knowledge and materiality, the allegations contained in paragraphs 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, and 106 of plaintiff's complaint.

48. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 107 of plaintiff's complaint.

49. Admits the allegations contained in paragraph 108.

50. Denies, for want of knowledge and materiality, the allegations contained in paragraphs 109 and 110 of plaintiff's complaint except that she denies the allegation that such corporation was created to shield the PA compound from creditors and affirmatively states that Home Savings had knowledge that Rigrtona Holding was a designee obtaining the mortgage interest of Home Savings.

51. Denies, for want of knowledge, the allegations contained in paragraphs 111, 112, and 113 of plaintiff's complaint.

52. Denies that Rigrtona Holding does not have any creditors, as alleged in paragraph 114, and affirmatively states, on information and belief, that these defendants are creditors of Rigrtona Holding, Inc. and that the asset which it holds is as a result of monies of this defendant being supplied to the debtor or his designee, Rigrtona Holding and subject to the equitable lien of these defendants.

53. Admits the allegations contained in paragraph 115 of plaintiff's complaint.

54. Denies the allegations contained in paragraph 116 of plaintiff's complaint.

55. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 117 of plaintiff's complaint.

56. Admits the allegations contained in paragraph 118 of plaintiff's complaint to the extent it alleges that these defendants were granted a security interest in shares of Osborne, Inc. but denies the balance of the allegations contained in said paragraph.

57. Admits that the plaintiff has identified two methods for perfection of a security interest in certificated shares of stock as alleged in paragraph 119.

58. Admits the allegation contained in paragraph 120 that a financing statement was filed but denies that it was naming only the debtor and affirmatively states that the RMO trustee was also named as a debtor and the share certificates were specifically identified in the financing statement, including Certificate #235 constituting 95 shares of stock in Osborne, Inc. in which the shareholder was identified as Richard M. Osborne, Trustee Under Restated Agreement Dated January 13, 1995.

59. Admits that a share certificate of Osborne, Inc. stock was delivered to this defendant as alleged in paragraph 121 of plaintiff's complaint and further states that the reissued share certificate included her prior holdings and shares derived from her execution upon the pledge agreement.

60. Denies the allegations contained in paragraphs 122 and 123 of plaintiff's complaint.

61. Admits the allegations contained in paragraphs 124 and 125 of plaintiff's complaint.

62. Denies the allegations contained in paragraph 126 and affirmatively states that such transfer was made contemporaneously to the creation of the debt.

63. Denies the allegations contained in paragraph 127 of plaintiff's complaint.

64. Denies, for want of knowledge, the allegations contained in paragraph 128 of plaintiff's complaint.

65. Denies the allegations contained in paragraphs 129 and 130 of plaintiff's complaint.

66. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 131 of plaintiff's complaint.

67. Admits the allegations contained in paragraphs 132 and 133 of plaintiff's complaint that a subordination occurred and was filed for record but denies the balnce of the allegations.

68. Denies the allegations contained in paragraphs 134, 135, and 136 of plaintiff's complaint.

69. Admits that the court did not enter an order authorizing such transfer and, if it is a transfer of an interest of the debtor in property, it was not authorized by the Bankruptcy Code as alleged in paragraph 137 of plaintiff's complaint.

70. Admits that the subordination agreement was made for the benefit of DMO Trust but denies the balance of the allegations contained in paragraphs 138 and 139 of plaintiff's complaint.

71. Denies the allegations contained in paragraph 140 of plaintiff's complaint.

72. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 141 of plaintiff's complaint.

73. Admits that a subordination agreement waives priority of lien but denies the balance of the allegations contained in paragraphs 142 and 143 of plaintiff's complaint.

74. Denies the allegations contained in paragraph 144 of plaintiff's complaint.

75. Denies the allegations contained in paragraphs 145, 146, 147, 148, 149, 150, 151, 152, and 153 of plaintiff's complaint.

76. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 154 of plaintiff's complaint.

77. Denies the allegations contained in paragraph 155 of plaintiff's complaint.

78. Admits the allegations regarding insolvency contained in paragraph 156 of plaintiff's complaint but denies the balance of the allegations contained in said paragraph.

79. Denies the allegations contained in paragraphs 157, 158, and 159 of plaintiff's complaint.

80. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 160 of plaintiff's complaint.

81. Denies the allegations contained in paragraph 161 of plaintiff's complaint.

82. Admits the allegations contained in paragraph 162 of plaintiff's complaint.

83. Denies the allegations contained in paragraphs 163, 164, and 165 of plaintiff's complaint.

84. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 166 of plaintiff's complaint.

85. Denies the allegations contained in paragraphs 167, 168, 169, 170, and 171 of plaintiff's complaint.

86. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 172 of plaintiff's complaint.

87. Admits the allegations contained in paragraphs 173 and 174 of plaintiff's complaint that the subordination agreement was filed and Rigrtona Holdings subordinated its interest to DMO Trust but denies the balance of the allegations contained therein.

88. Denies the allegations contained in paragraph 175 of plaintiff's complaint.

89. Denies the allegations contained in paragraphs 176, 177, and 178 of plaintiff's complaint and affirmatively states that the defendant's security interest in the 95 shares of Osborne, Inc. had been perfected since 2009 and denies that the subordination agreement was designed to shield assets from debtor's creditors.

90. Denies the allegations contained in paragraphs 179, 180, 181, 182, 183, and 184 of plaintiff's complaint.

91. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 185 of plaintiff's complaint.

92. Denies the allegations contained in paragraphs 186, 187, 188, and 189 of plaintiff's complaint.

93. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 190 of plaintiff's complaint.

94. Denies the allegations set forth in paragraph 191 of plaintiff's complaint.

95. Admits the allegations contained in paragraph 192 of plaintiff's complaint.

96. Denies, for want of knowledge, the allegations contained in paragraph 193 of plaintiff's complaint.

97. Denies the allegations contained in paragraphs 194 and 195 of plaintiff's complaint.

98. Denies, for want of knowledge, the allegations contained in paragraph 196 of plaintiff's complaint.

99. Denies the allegations contained in paragraph 197 of plaintiff's complaint

100. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 198 of plaintiff's complaint.

101. Denies the allegations contained in paragraphs 199, 200, 201, 202, and 203 of plaintiff's complaint.

102. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 204 of plaintiff's complaint.

103. Denies, for want of knowledge, the allegations contained in paragraph 205 of plaintiff's complaint.

104. Denies the allegations contained in paragraphs 206, 207, and 208 of plaintiff's complaint.

105. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 209 of plaintiff's complaint.

106. Denies, for want of knowledge, the allegations contained in paragraph 210 of plaintiff's complaint.

107. Denies the allegations contained in paragraphs 211, 212, and 213 of plaintiff's complaint.

108. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 214 of plaintiff's complaint.

109. Denies the allegations contained in paragraph 215 of plaintiff's complaint.

110. Admits the allegations contained in paragraph 216 of plaintiff's complaint.

111. Denies the allegations contained in paragraphs 217, 218, and 219 of plaintiff's complaint.

112. Denies, for want of knowledge, the allegations contained in paragraph 220 of plaintiff's complaint.

113. Denies the allegations contained in paragraph 221 of plaintiff's complaint.

114. Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 222 of plaintiff's complaint.

115.  Denies the allegations contained in paragraphs 223, 224, and 225 of plaintiff's complaint.

116.  Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 226 of plaintiff's complaint.

117.  Admits the allegations contained in paragraphs 227 and 228 of plaintiff's complaint.

118.  Denies, for want of knowledge, the allegations contained in paragraphs 229, 230, and 231 of plaintiff's complaint.

119.  Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 232 of plaintiff's complaint.

120.  Admits the allegations contained in paragraph 233 of plaintiff's complaint that defendants claim a secured claim in excess of $1,100,000.

121.  Denies the allegations contained in paragraphs 234, 235, 236, and 237 of plaintiff's complaint.

122.  Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 238 of plaintiff's complaint.

123.  Denies, for want of knowledge, the allegations contained in paragraphs 239, 240, 241, 242, and 243 of plaintiff's complaint.

124.  Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 244 of plaintiff's complaint.

125.  Denies, for want of knowledge, the allegations contained in paragraphs 245 and 246 of plaintiff's complaint.

126.  Admits and denies, in the same manner and order as hereinabove set forth, the allegations contained in paragraph 247 of plaintiff's complaint.

127.  Admits the allegations contained in paragraphs 248 and 249 of plaintiff's complaint.

128.  Denies the allegations contained in paragraph 250.

129.  Admits the allegations contained in paragraph 251 of plaintiff's complaint and affirmatively states that it has an interest in the PA compound as more fully set forth below.

## SECOND DEFENSE

130.  The debtor owes to Diane Osborne amounts in excess of $1,100,000 consisting of unpaid spousal support and various loans with accruing interest outlined in the trustee's complaint.

131.  Such obligations were secured by a pledge agreement dated September 16, 2009 of certain stock held by the debtor and/or the Richard M. Osborne Trust.  A true and accurate copy of the original pledge agreement is attached hereto, labeled Exhibit B, and incorporated herein by reference as if rewritten in full.

132.  Said pledge agreement was thereafter amended on the 28th day of February, 2012, a true and accurate copy of which is attached hereto, labeled Exhibit C, and incorporated herein by reference as if rewritten in full which, among other provisions, added shares of stock in Energy, Inc.

133.  On February 25, 2016, the debtor and the debtor and these defendants executed a further loan agreement and released and delivered 35,000 shares of Energy, Inc. to the debtor in exchange for, among other consideration, a mortgage which would become a first and best lien on the PA compound by way of the subordination of a mortgage held by Osair, Inc. and by a subordination of the Home Savings and Loan Company mortgage which it was anticipated would be acquired by the debtor or his assignee.  A true and accurate copy of said document is attached hereto, labeled Exhibit D, and incorporated by reference as if rewritten in full.

134. Such agreement was amended on or about the 25th day of April, 2016 which, among other obligations and events, required the filing of the assignment of an interest in the Osair, Inc. mortgage in favor of these defendants and obligated the release of the executed mortgage instrument from escrow when the debtor's assignee acquired ownership of the Home Savings mortgage.  A true and accurate copy of which is attached hereto, labeled Exhibit E, and incorporated herein by reference as if rewritten in full.

135.  The debtor designated Rigrtona Holding Company LLC and such entity became the holder of the mortgage interest formerly held by Home Savings.

136.  The debtor has a right to compel subordination of the Home Savings mortgage lien now held by Rigrtona Holding Company to her interest in the property and to compel the release of such document from escrow.

## THIRD DEFENSE

137. These defendants reallege and reaver each and every allegation set forth above.

138. The plaintiff is asserting that Rigrtona Holding Company LLC is an alter ego of the debtor, Richard M. Osborne.

139. The debtor is the owner of the property.

140. In the event the trustee is successful, legal and equitable title to the property will be in the same person and such mortgage will be merged into the title and the mortgage extinguished.

## FOURTH DEFENSE

141. These defendants reallege and reaver each and every allegation set forth above.

142. The estate and Home Savings will be receiving sums of money as the result of a fire loss that adversely impacted the collateral value of these defendants.

143. Such amounts received ought to be credited against the amount otherwise remaining owing on the mortgage formerly held by Home Savings and now held by Rigrtona Holding Company LLC.

## FIFTH DEFENSE

144. Plaintiff's complaint contains clauses that do not state a cause of action.

## SIXTH DEFENSE

145. Plaintiff's claims are barred by the applicable statute of limitations of actions.

WHEREFORE, defendants pray that this Court enter its order declaring and determining the right, title, and interest of all parties in and/or to the real property described in plaintiff's complaint and known as the PA compound and deny the relief requested with respect to avoidance of the interests of these defendants in Osborne, Inc. stock and that its claims be allowed in full, and for such other and further relief as is just and proper.

GIBSON & MORAN LLC

/s/ Michael J. Moran
Michael J. Moran          (#0018869)
Attorney for Diane M. Osborne Trust and
Diane M. Osborne
234 Portage Trail, P.O. Box 535
Cuyahoga Falls, OH 44222
(330) 929-0507
(330) 929-6605 - Fax
mike@gibsonmoran.com

## CERTIFICATE OF SERVICE

I certify that, on March 6, 2020, a true and correct copy of this answer was served:

Via the court's Electronic Case Filing System on these entities and individuals who are listed on the court's Electronic Mail Notice List:

Marcel C. Duhamel, on behalf of Kari B. Coniglio, mcduhamel@vorys.com

Kari B. Coniglio, Trustee, kbconiglio@vorys.com

United States Trustee

And by regular U.S. Mail, postage prepaid, on:

Richard M. Osborne, Sr.
7265 Markell Road
Waite Hill, OH 44094

RMO, Inc.
c/o Melvyn E. Resnick, Statutory Agent
153 E. Erie Street Suite 304
Painesville, OH 44077

Rigrtona Holding Company, LLC
c/o Richard M. Osborne, Statutory Agent
7001 Center Street rear door
Mentor, OH 44060

Osair, Inc.
c/o Richard M. Osborne, Statutory Agent
7001 Center Street
Mentor, OH 44060

/s/ Michael J. Moran
Michael J. Moran          (#0018869)
Attorney for Diane M. Osborne Trust and
Diane M. Osborne
234 Portage Trail, P.O. Box 535
Cuyahoga Falls, OH 44222
(330) 929-0507
(330) 929-6605 - Fax
mike@gibsonmoran.com

## UCC FINANCING STATEMENT

File Number: OH00137343565
Date Filed: 09/23/2009 01:56 PM

Jennifer Brunner

Secretary of State

### FILER INFORMATION

CONTACT INFORMATION FOR FILER

| CONTACT EMAIL | CONTACT NAME | CONTACT PHONE | CONTACT FAX |
|---|---|---|---|
| kkraus@dworkenlaw.com | DWORKEN & BERNSTEIN CO., LPA | 440-352-3391 | 440-352-3469 |

SEND ACKNOWLEDGMENT TO:

| PACKET NO DOSBORNE | CLIENT ACCOUNT # 10078 | | | | |
|---|---|---|---|---|---|
| INDIVIDUAL'S LAST NAME KRAUS | FIRST NAME KEITH | | MIDDLE NAME R. | SUFFIX | |
| MAILING ADDRESS 60 SOUTH PARK PLACE | CITY PAINESVILLE | STAT OH | POSTAL CODE 44077 | COUNTRY US | |

### FILE RECORD

| FILING TYPE Initial | | | | |
|---|---|---|---|---|
| FILERS UNIQUE 73331 | ALTERNATE NAME DESIGNATION DEBTOR/SECURED PARTY | | ALTERNATE FILING TYPE UCC | |
| ADDITIONAL INFORMATION | | | MATURITY DATE | |

### DEBTOR DATA

| INDIVIDUAL'S LAST NAME OSBORNE | FIRST NAME RICHARD | MIDDLE NAME | SUFFIX | |
|---|---|---|---|---|
| MAILING ADDRESS 8500 STATION STREET | CITY MENTOR | STATE OH | POSTAL 44060 | |
| COUNTRY US | ALTERNATE CAPACITY OF DEBTOR TRUSTEE | | | |

### SECURED PARTY DATA

| INDIVIDUAL'S LAST NAME OSBORNE | FIRST NAME DIANE | MIDDLE NAME | SUFFIX | |
|---|---|---|---|---|
| MAILING ADDRESS 9476 STONEMILL DRIVE | CITY MENTOR | STATE OH | POSTAL 44060 | COUNTRY US |

This FINANCING STATEMENT covers the following Collateral:

153 Shares of Common Voting Stock of Osborne, Inc. evidenced by the following Certificates:

EXHIBIT

A

| Cert No. | No. of Shares | Shareholder |
|---|---|---|
| 140 | 30 | Richard McKay Osborne |
| 154 | 28 | Richard M. Osborne |
| 235 | 95 | Richard M. Osborne Trustee under Restated Agreement dated 1-13-95 |



EXHIBIT

B

## PLEDGE AGREEMENT

THIS PLEDGE AGREEMENT, made at Mentor, Ohio this 16th day of 2009, by the undersigned **RICHARD M. OSBORNE** and **RICHARD M. OSBORNE, TRUSTEE U/T/A 1-13-95 AS AMENDED** (hereinafter collectively "Osborne") and **DIANE M. OSBORNE** ("Diane") is evidence that:

Osborne has executed that certain Cognovit Promissory Note ("Note") of even date herewith in favor of Diane whereby Osborne has agreed to pay Diane the principal sum of Two Hundred Fifty Thousand Dollars ($250,000.00) as more fully set forth therein..

Osborne has agreed with Diane to secure all of Osborne's obligations (the "Obligations") under the Note, whether presently existing or hereafter arising, with a pledge of certain shares of stock in Osborne, Inc. which are hereinafter referred to as the "Collateral".

NOW THEREFORE, to affect the pledge of the Collateral by Osborne to Diane Osborne and Diane hereby enter into this Pledge Agreement as follows:

## PLEDGE

I.      **PLEDGE OF COLLATERAL**.  As security for the payment of the Obligations, Osborne hereby pledges, assigns and sets over to Diane the" Collateral" as hereinafter defined.

2.      **TERMS, CONDITIONS AND AGREEMENTS OF PLEDGE.**

    A.  **DEFINITIONS:**

    (i)      the term "Collateral" shall include the property described in <u>Exhibit "A"</u> together with all replacements, accessions, substitutions, additions, products and proceeds thereof now or hereafter pledged or in the possession of Osborne and any distributions of accretions thereof.

    (ii)      the term "Obligations" shall include all obligations of Osborne to Diane under and by virtue of that certain Note of even date herewith.

    B.      **WARRANTY.**  Osborne warrants that he is the sole owner of the Collateral; that Osborne has full power and authority to pledge the same

1

as herein provided; that all the certificates, shares of stock, bonds or other securities comprised in or evidencing the Collateral are validly issued, fully paid and non-assessable; that the Collateral is free and clear of all liens, charges, encumbrances, pledges, security interests, assignments or transfers of any interest therein or thereto (other than to Diane) and Osborne warrants and will defend the Collateral against the claims and demands of all persons whomsoever. Osborne further warrants that during the term of this Agreement and as long as any of the Obligations remain outstanding, Osborne will not grant a security interest in the Collateral to any other person and will otherwise keep the Collateral free from any and all adverse claims or encumbrances.

C.  **TAXES AND ASSESSMENTS**. If Osborne fails to pay any tax or assessment relating to the Collateral as required and when due, Diane may, at her option, pay or discharge the same, although he is not required to do so. Any payments made by Diane under this subsection shall become a part of the Obligations secured by the Collateral.

D.  **REPORTING OF EARNINGS AND PROFITS**. Osborne agrees that all interest, dividends, income, earnings and profits with respect to the Collateral will be reported for state and federal income tax purposes as attributable to Osborne and not Diane.

E.  **DELIVERY OF CERTIFICATES**. Osborne has or hereafter shall deliver to Diane certificates for all property comprised of the Collateral pledged hereby, and for all other property required to be hereafter pledged to Diane, promptly after Osborne becomes the owner of such in every instance accompanied by a Power of Attorney or assignment sufficient to authorize Diane pursuant to the pledge of and security interest in the Collateral hereby made and given to dispose of the Collateral as hereinafter provided in the event of any default by Osborne, with signature guaranteed or otherwise evidenced to Diane's satisfaction. Without limiting the foregoing, Osborne hereby irrevocably constitutes and appoints Diane, through any vice president thereof, with full power of substitution, as her true and lawful Attorney-in-Fact, with full irrevocable power and authority in the place and stead of Osborne and in the name of Osborne or in his own name, from time to time, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments which Diane deems necessary to accomplish the purpose of this Agreement which Power of Attorney is coupled with an interest and shall be irrevocable. Without limiting the generality of the foregoing, Diane shall have the right and power following a default under any of the Obligations to receive, endorse, and collect all checks and other orders for the payment of money made payable to Osborne representing any interest payment,

2

dividend, or other distribution payable or distributable in respect of the Collateral, or any part thereof, and to give full discharge for the same. Upon such a default, Diane, in her discretion, may direct Osborne or Osborne's agent, to dispose of the Collateral as hereinafter provided.

F.   **RIGHTS OF OSBORNE PRIOR TO DEFAULT**.  Unless and until an event of default with respect to the Obligations shall have occurred, but not thereafter, (i) Osborne shall have the right from time to time, to vote and give consents with respect to any shares of stock included in the Collateral with the same force and effect as if such shares of stock were not included in the Collateral, and (ii) Osborne shall be entitled to receive and retain cash dividends or interest as may be paid on or in respect of the property included in the Collateral, unless such cash dividends or interest are paid in partial or complete liquidation of the corporation making such payment.  However, if any event of default under the Obligations shall have occurred, then, during the continuance thereof, Diane, in addition to the other remedies provided, may collect and receive all such dividends and interest and, in her discretion, may vote or cause her nominee to vote the shares of stock included in the Collateral.

G.   **RIGHTS OF DIANE TO OTHER DISTRIBUTIONS**.  All dividends and interest (other than cash dividends and interest which Osborne is permitted to receive by the terms of the immediately preceding subsection), and other distributions upon or with respect to the Collateral (including distributions in respect of subsidiaries or in dissolution, liquidation, redemption, stock dividends, split-ups or other recapitalizations, rearrangements, mergers or consolidations of the capital structure of the corporation or its subsidiaries) shall be received by Diane and held as security for the Obligations.

H.   **RIGHTS OF DIANE ON DEFAULT**.  In the event of any Event of Default with respect to the Obligations, Diane may forthwith apply any cash constituting a part of the Collateral to the payment of the Obligations ratably, and may liquidate and sell any non-cash portion of the Collateral by public or private sale, free of any right or equity of redemption in Osborne or anyone claiming through or under Osborne, which right or equity of redemption is hereby expressly waived and released, and apply the net proceeds of such liquidation after deducting all reasonable costs and expenses to the payment of the Obligations, provided that in connection with any such liquidation or sale, Diane may purchase or otherwise acquire for her own account any interest in any portion of such Collateral. Any surplus shall be returned to Osborne. Osborne waives, to the full extent permitted by law, all rights of appraisement or valuation, whether before or after sale. Without limiting the foregoing, Diane shall also have, in addition to any other rights and remedies contained in this

3

Agreement and any other agreements, guarantees, notes, instruments and documents heretofore, now or at any time or times hereafter executed by Osborne, and/or guarantors, and delivered to Diane, all of the rights and remedies of a secured party, under law, including without limitation all of the rights and remedies of a secured party under the Uniform Commercial Code in force in the State of Ohio, all of which rights and remedies shall be cumulative, and non-exclusive, to the extent permitted by law.

I. **DISCHARGE OF PLEDGE**. If the Obligations shall have been paid and discharged in full, then and in that event all rights and interests assigned and pledged hereby or pursuant hereto by Osborne shall revert to Osborne and cease, terminate and be void and the Collateral belonging to Osborne shall forthwith be transferred and delivered to Osborne.

J. **RIGHT OF DIANE TO DEAL**. Osborne hereby grants to Diane full power and authority, in her uncontrolled discretion and without notice to Osborne, to deal in any manner with respect to the Obligations, including, but without limiting the generality of the foregoing, the following powers:

   (i)    with the consent of Osborne, to modify, supplement or otherwise change the terms of any Obligations; to grant any extension, renewal or any other waiver or indulgence, and to affect any release, compromise or settlement with respect to any Obligations;

   (ii)   to waive or enter into any agreement of forbearance with respect to the Obligations or the Collateral at any time held by Diane, and to change the terms of any such waiver or agreement of forbearance;

   (iii)  to consent to the substitution, exchange or release of all or any part of any other security at any time held for the Obligations, and in the case of a substitution or exchange, whether or not the security received by Diane shall be the same or of a different character or value from the security surrendered by Diane; and

   (iv)  to accelerate the maturity of the Obligations in accordance with the terms thereof.

No action which Diane shall take or fail to take pursuant to the foregoing powers shall operate to release the pledge hereby created. Osborne shall have no right of recourse against Diane by reason of any action which Diane may take or fail to take pursuant to the foregoing powers.

K. **NO RIGHT OF EXONERATION**. Osborne hereby waives, releases and discharges any right of exoneration with respect to the Obligations and

4

also any right at law, or in equity or by statute to require Diane to pursue or otherwise avail himself of any rights or remedies which Diane has or may have against Osborne or any other person with respect to payment or the performance of the Obligations, or to pursue or exhaust any of Diane's rights or remedies with respect to any other security at any time held by Diane for the payment or performance of the Obligations.

L.  **OSBORNE'S RIGHT OF REIMBURSEMENT OR SUBROGATION**.
Osborne shall have no right of reimbursement or subrogation with respect to the Obligations unless and until Diane shall have received payment in full of all principal and interest on the Obligations.  Osborne hereby waives and releases any equity or right of Diane.

M.  **NOTICES**.  All notices hereunder shall be deemed to have been sufficiently given or received for all purposes hereof, when mailed, first class, postage prepaid, to the address given below:

Osborne:     Richard M. Osborne
             Richard M. Osborne, Trustee U.T.A 1-13-95
             8585 East Avenue
             Mentor, Ohio 44060

Diane:       Ms. Diane M. Osborne
             9576 Stonemill Drive
             Mentor, Ohio 44060

N.  **GENERAL PROVISIONS**.

(i)     This Pledge Agreement shall be binding upon Osborne, Osborne's heirs, administrators, successors and assigns and shall inure to the benefit of and be enforceable by Diane, her heirs, administrators, successors and assigns.

(ii)    Each reference herein to Diane shall be deemed to include her heirs, administrators, successors and assigns, and each reference to Osborne and any pronouns referring thereto as used herein shall be construed in the masculine, feminine or neuter, singular or plural, as the context may require, and shall be deemed to include their respective heirs, administrators, legal representatives, successors and assigns, all of whom shall be bound by the provisions hereof.

(iii)   No delay on the part of Diane in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights, no notice to or demand on Osborne shall be deemed to be a

5

20-01013-aih    Doc 6    FILED 03/09/20    ENTERED 03/09/20 13:12:03    Page 20 of 37

waiver of any obligations of Osborne or of the right of Diane to take other or further action without notice or demand as provided herein. In any event, no modification or waiver of the provision hereof shall be effective unless in writing and signed by Diane nor shall any waiver be applicable except in the specific instance or the matter for which given.

(iv)   This Agreement is and shall be deemed to be a contract entered into and made pursuant to the laws of the State of Ohio and shall in all respects be governed, construed and applied and enforced in accordance with the laws of said State.

(v)   Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law. Should any portion of this Agreement be declared invalid for any reason in any jurisdiction, such declaration shall have no effect upon the remaining portions of this Agreement.

(vi)   The section headings in this Agreement are included for convenience only and shall not be used to interpret, limit, or define the scope or intent of any provision of this Agreement.

   **IN WITNESS WHEREOF,** this Pledge Agreement has been executed at the place and on the date as first above written.

DIANE:
DIANE M. OSBORNE

_Diane M. Osborne_
Diane M. Osborne

OSBORNE:
RICHARD M. OSBORNE
Individually

_Richard M. Osborne_
Richard M. Osborne

RICHARD M. OSBORNE, TRUSTEE
U/T/A 1-13-95 AS AMENDED

BY. _Richard M. Osborne, Trustee_
Richard M. Osborne, Trustee

6

EXHIBIT "A"

153 Shares of Common Voting Stock of Osborne, Inc,. evidenced by the following Certificates:

| Certificate Number | Number of Shares | Shareholder |
| --- | --- | --- |
| 140 | 30 | Richard McKay Osborne |
| 154 | 28 | Richard M. Osborne |
| 235 | 95 | Richard M. Osborne Trustee Under Restated Agreement Dated 1-13-95 |

7



## AMENDED PLEDGE AGREEMENT

THIS AMENDED PLEDGE AGREEMENT, made at Mentor, Ohio this 28th day of February, 2012, by the undersigned **RICHARD M. OSBORNE** and **RICHARD M. OSBORNE, TRUSTEE U/T/A 1-13-95 AS AMENDED** (hereinafter collectively ("Osborne")) and **DIANE M. OSBORNE, TRUSTEE OF THE DIANE M. OSBORNE TRUST** (hereinafter referred to as "Diane") is evidenced that:

Osborne has executed two Promissory Notes, the first dated September 16, 2009 and amended by the Promissory Note of even date herewith, and the second dated March 16, 2010 and amended by the Amended Promissory Note of even date hereof, respectively in favor of Diane whereby Osborne has agreed to pay Diane the principal sum of Two Hundred Fifty Thousand Dollars ($250,000.00) on each note for a total of Five Hundred Thousand Dollars ($500,000.00) (collectively, the "Notes").

Osborne has agreed with Diane to secure all of Osborne's obligations (the "Obligations") under the Notes, whether presently existing or hereafter arising, with a pledge of certain shares of stock, Osborne, inc., which are hereinafter referred to as the "Collateral".

NOW THEREFORE, to affect the pledge of the Collateral by Osborne to Diane Osborne and Diane hereby enter into this Amended Pledge Agreement as follows: *& ENERGY INC, AS EVIDENCED IN EX 'A' ATTACHED HERETO,*

### PLEDGE

1. **PLEDGE OF COLLATERAL.** As security for the payment of the Obligations, Osborne hereby pledges, assigns and sets over to Diane the "Collateral" as hereinafter defined.

2. **TERMS, CONDITIONS AND AGREEMENTS OF PLEDGE.**

   A. **DEFINITIONS:**

      (i) the term "Collateral" shall include the property described in Exhibit "A" together with all replacements, accessions, substitutions, additions, products and proceeds thereof now or hereafter pledged or in the possession of Osborne and any distributions of accretions thereof.

      (ii) the term "Obligations" shall include all obligations of Osborne to Diane under and by virtue of the Notes.

   B. **WARRANTY.** Osborne warrants that he is the sole owner of the Collateral; that Osborne has full power and authority to pledge the same as herein provided; that all the certificates, shares of stock, bonds or other securities comprised in or evidencing the Collateral are validly issued, fully paid and non-assessable; that the Collateral is free and clear of all liens, charges, encumbrances, pledges, security interests, assignments or transfers of any interest therein or thereto (other than to Diane) and Osborne warrants and will defend the Collateral against the claims and demands of all persons whomsoever. Osborne further warrants that

1

612173_3

20-01013-aih   Doc 6   FILED 03/09/20   ENTERED 03/09/20 13:12:03   Page 23 of 37

during the term of this Agreement and as long as any of the Obligations remain outstanding, Osborne will not grant a security interest in the Collateral to any other person and will otherwise keep the Collateral free from any and all adverse claims or encumbrances.

C.  **TAXES AND ASSESSMENTS**. If Osborne fails to pay any tax or assessment relating to the Collateral as required and when due, Diane may, at her option, pay or discharge the same, although he is not required to do so. Any payments made by Diane under this subsection shall become a part of the Obligations secured by the Collateral.

D.  **REPORTING OF EARNINGS AND PROFITS**. Osborne agrees that all interest, dividends, income, earnings and profits with respect to the Collateral will be reported for state and federal income tax purposes as attributable to Osborne and not Diane.

E.  **DELIVERY OF CERTIFICATES**. Osborne has or hereafter shall deliver to Diane certificates for all property comprised of the Collateral pledged hereby, and for all other property required to be hereafter pledged to Diane, promptly after Osborne becomes the owner of such in every instance accompanied by a Power of Attorney or assignment sufficient to authorize Diane pursuant to the pledge of and security interest in the Collateral hereby made and given to dispose of the Collateral as hereinafter provided in the event of any default by Osborne, with signature guaranteed or otherwise evidenced to Diane's satisfaction. Without limiting the foregoing, Osborne hereby irrevocably constitutes and appoints Diane, through any vice president thereof, with full power of substitution, as her true and lawful Attorney-in-Fact, with full irrevocable power and authority in the place and stead of Osborne and in the name of Osborne or in his own name, from time to time, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments which Diane deems necessary to accomplish the purpose of this Agreement which Power of Attorney is coupled with an interest and shall be irrevocable. Without limiting the generality of the foregoing, Diane shall have the right and power following a default under any of the Obligations to receive, endorse, and collect all checks and other orders for the payment of money made payable to Osborne representing any interest payment, dividend, or other distribution payable or distributable in respect of the Collateral, or any part thereof, and to give full discharge for the same. Upon such a default, Diane, in her discretion, may direct Osborne or Osborne's agent, to dispose of the Collateral as hereinafter provided.

F.  **RIGHTS OF OSBORNE PRIOR TO DEFAULT**. Unless and until an event of default with respect to the Obligations shall have occurred, but not thereafter, (i) Osborne shall have the right from time to time, to vote and give consents with respect to any shares of stock included in the Collateral with the same force and effect as ff such shares of stock were not included in the Collateral, and (ii)

2

612173_3

Osborne shall be entitled to receive and retain cash dividends or interest as may be paid on or in respect of the property included in the Collateral, unless such cash dividends or interest are paid in partial or complete liquidation of the corporation making such payment. However, if any event of default under the Obligations shall have occurred, then during the continuance thereof, Diane, in addition to the other remedies provided, may collect and receive all such dividends and interest and, in her discretion, may vote or cause her nominee to vote the shares of stock included in the Collateral.

G.     <u>RIGHTS OF DIANE TO OTHER DISTRIBUTIONS</u>. All dividends and interest (other than cash dividends and interest which Osborne is permitted to receive by the terms of the immediately preceding subsection), and other distributions upon or with respect to the Collateral (including distributions in respect of subsidiaries or in dissolution, liquidation, redemption, stock dividends, split-ups or other recapitalizations, rearrangements, mergers or consolidations of the capital structure of the corporation or its subsidiaries) shall be received by Diane and held as security for the Obligations.

H.     <u>RIGHT OF DIANE ON DEFAULT</u>. In the event of any Event of Default with respect to the Obligations, Diane may forthwith apply any cash constitution a part of the Collateral to the payment of the Obligations ratably, and may liquidate and sell any non-cash portion of the Collateral by public or private sale, free of any right or equity of redemption in Osborne or anyone claiming through or under Osborne, which right or equity of redemption is hereby expressly waived and released, and apply the net proceeds of such liquidation after deducting all reasonable costs and expenses to the payment of the Obligations, provided that in connection with any such liquidation or sale, Diane may purchase or otherwise acquire for her own account any interest in any portion of such Collateral. Any surplus shall be returned to Osborne. Osborne waives to the full extent permitted by lave, all rights of appraisement or valuation, whether before or after sale. Without limiting the foregoing, Diane shall also have, in addition to any other rights and remedies contained in this Agreement and any other agreements, guarantees, notes, instruments and documents heretofore, now or at any time or times hereafter executed by Osborne, and/or guarantors, and delivered to Diane, all of the rights and remedies of a secured party, under law, including without limitation all of the rights and remedies of a secured party under the Uniform Commercial Code in force in the State of Ohio, all of which rights and remedies shall be cumulative, and non-exclusive, to the extent permitted by law.

I.     <u>DISCHARGE OF PLEDGE</u>. If the Obligations shall have been paid and discharged in full, then and in that event all rights and interest assigned and pledged hereby or pursuant hereto by Osborne shall revert to Osborne and cease, terminate and be void and the Collateral belonging to Osborne shall forthwith be transferred and delivered to Osborne.

3

J.   **RIGHT OF DIANE TO DEAL**. Osborne hereby grants to Diane full power and authority, in her uncontrolled discretion and without notice to Osborne, to deal in any manner with respect to the Obligations, including, but without limiting the generality of the foregoing, the following powers:

(i)   with the consent of Osborne, to modify, supplement or otherwise change the terms of any Obligations, to grant any extension, renewal or any other waiver or indulgence, and to affect any release, compromise or settlement with respect to any Obligations;

(ii)   to waive or enter into any agreement of forbearance with respect to the Obligations or the Collateral at any time held by Diane, and to change the terms of any such waiver or agreement of forbearance;

(iii)   to consent to the substitution, exchange or release of all or any part of any other security at any time held for the Obligations, and in the case of a substitution or exchange, whether or not the security received by Diane shall be the same or of a different character or value from the security surrendered by Diane; and

(iv)   to accelerate the maturity of the Obligations in accordance with the terms thereof.

No action which Diane shall take or fail to take pursuant to the foregoing powers shall operate to release the pledge hereby created. Osborne shall have no right of recourse against Diane by reason of any action which Diane may take or fail to take pursuant to the foregoing powers.

K.   **NO RIGHT OF EXONERATION**. Osborne hereby waives, releases and discharges any right of exoneration with respect to the Obligations and also any right at law, or in equity or by statute to require Diane to pursue or otherwise avail himself of any rights or remedies which Diane has or may have against Osborne or any other person with respect to payment or the performance of the Obligations, or to pursue or exhaust and of Diane's rights or remedies with respect to any other security at any time held by Diane for the payment or performance of the Obligations.

L.   **OSBORNE'S RIGHT OF REIMBURSEMENT OR SUBROGATION**. Osborne shall have no right of reimbursement or subrogation with respect to the Obligations unless and until Diane shall have received payment in full of all principal and interest on the Obligations. Osborne hereby waives and releases any equity or right of Diane.

M.   **NOTICES**. All notices hereunder shall be deemed to have been sufficiently given or received for all purposes hereof, when mailed, first class, postage prepaid, to the address given below:

4

612173_3

Osborne:    Richard M. Osborne
            Richard M. Osborne, Trustee U.T.A 1-13-95
            8500 Station St., Suite 113
            Mentor, OH 44060

Diane;      Ms. Diane M. Osborne
            9576 Stonemill Drive
            Mentor, OH 44060

N.    GENERAL PROVISIONS.

(i)    This Amended Pledge Agreement shall be binding upon Osborne, Osborne's heirs, administrators, successors, assigns and trustees and shall inure to the benefit of and be enforceable by Diane, her heirs, administrators, successors, assigns and trustees.

(ii)   Each reference herein to Diane shall be deemed to include her heirs, administrators, successors, assigns and trustees, and each reference to Osborne and any pronouns referring thereto as used herein shall be construed in the masculine, feminine or neuter, singular or plural, as the context may require, and shall be deemed to include their respective heirs, administrators, legal representatives, successors, assigns and trustees, all of who shall be bound by the provisions hereof.

(iii)  No delay on the part of Diane in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights, no notice to or demand on Osborne shall be deemed to be a waiver of any obligations of Osborne or of the right of Diane to take other or further action without notice or demand as provided herein. In any event, no modification or waiver of the provision hereof shall be effective unless in writing and signed by Diane nor shall any waiver be applicable except in the specific instance or the matter for which given.

(iv)   This Agreement is and shall be deemed to be a contract entered into and made pursuant to the laws of the State of Ohio and shall in all respects be governed, construed and applied and enforced in accordance with the laws of said State.

(v)    Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law. Should any portion of this Agreement be declared invalid for any reason in any jurisdiction, such declaration shall have no effect upon the remaining portions of this Agreement.

(vi)   The section headings in this Agreement are included for convenience only and shall not be used to interpret, limit, or define the scope or intent of any provision of this Agreement.

5

612173_3

IN WITNESS WHEREOF, the Amended Pledge Agreement has been executed at the place and on the date as first above written.

DIANE:
DIANE M. OSBORNE

_____
Diane M. Osborne

OSBORNE:
RICHARD M. OSBORNE
Individually

_____
Richard M. Osborne

RICHARD M. OSBORNE, TRUSTEE
U/T/A/ 1-13-95 AS AMENDED

By: _____
Richard M. Osborne, Trustee

6

612173_3

EXHIBIT "A"

153 Shares of Common Voting Stock of Osborne, Inc., evidenced by the following Certificates:

| Certificate Number | Number of Shares | Shareholder |
| --- | --- | --- |
| 140 | 30 | Richard McKay Osborne |
| 154 | 28 | Richard M. Osborne |
| 235 | 95 | Richard M. Osborne Trustee Under Restated Agreement Dated 1-13-95 |

35,000 Shares of Energy, Inc., as evidenced by the following Certificate:

| Certificate Number | Number of Shares | Shareholder |
| --- | --- | --- |
| ZQ00007654 | 35,000 | Richard M. Osborne Trust, Trustee Under Restated Agreement Dated 1 |



EXHIBIT

D

## LOAN AGREEMENT
## AND ESCROW INSTRUCTIONS

THIS AGREEMENT entered into on this _25_ day of February, 2016, by and between Diane M. Osborne, Trustee of the Diane M. Osborne Trust U/T/A June 22, 2004, hereinafter referred to as "Lender" and Richard M. Osborne, Trustee of the Richard M. Osborne Trust U/T/A January 13, 1995, as amended; Nathan Properties, LLC; Richard M. Osborne; Mentor Condominiums, LLC; 6631 Ridge Road, LLC; and Richard M. Osborne, Trustee of The Rigrtona Trust (collectively hereinafter referred to as "Borrower").

### RECITALS

WHEREAS, Lender has loaned the Borrower various amounts of money at various times, the amounts and the date of the loans are hereinafter more fully set forth, and

WHEREAS, the Borrower on or about the 28th day of February, 2012, pledged 35,000 shares of common stock of Gas Energy, Inc., and

WHEREAS, Borrower has requested the Lender to release from the Pledge said shares of common stock of Gas Energy, Inc., and in consideration thereof, has agreed to grant the Lender two (2) parcels of real estate as collateral, one situated in the Township of Madison, County of Lake, State of Ohio, and the other property located in Warren County, Pennsylvania, and

WHEREAS, both Lender and Borrower have designated Lake County Title as Escrow Agent and Title Company to insure that the Lender's two Mortgages will be the first and best liens on both of the above-described properties;

NOW, THEREFORE, in consideration of the facts set forth above and the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. The Lender has agreed, subject to the terms hereinafter set forth, to release as its security from the pledge the 35,000 shares of Energy, Inc., to Richard M. Osborne. Upon the execution of this Agreement, Lender shall immediately deliver the stock certificates for the 35,000 shares of Energy, Inc., stock to Lake County Title as escrow agent.

2. In consideration thereof, the Borrower agrees to grant to the Lender two Mortgages which shall be the first and best lien on the following two properties:

   a. Vacant commercial property located in Madison Township, Lake County, Ohio, Permanent Parcel No. 01-KB-108-A-00-007-0.

   b. Property situated in Triumph Township, Warren County, Pennsylvania, titled in the name of Richard M. Osborne, Trustee of The Rigrtona Trust.

LOAN AGREEMENT CLEAN

1

The two (2) aforedescribed Mortgages shall be collectively referred to herein as the "Mortgages" and the two (2) aforedescribed properties shall be referred to as the "Mortgaged Properties".

. . .

3. The escrow agent shall be Lake County Title, with the condition that this Agreement shall serve as escrow instructions, and Escrow Agent may attach hereto its customary forms and conditions of acceptance of escrow.

4. The Escrow Agent shall cause the Mortgages to be filed with the appropriate County Recorder (Lake County, Ohio, for the Madison property and Warren County, Pennsylvania, for the Rigrtona property) after insuring that they are the first and best liens.

5. The escrow agent shall forward, after recording the Mortgages, an Escrow Statement to Lender's attorney, Joseph T. Svete of 100 Parker Court, Suite 3, Chardon, Ohio, 44024.

6. Borrower shall be responsible for the cost and payment of the following:

   a. all costs associated with this escrow including title fees, escrow fees, filing fees, and all charges by the escrow agent including title insurance;
   b. payment of Lender's attorney fees, which statement shall be submitted to escrow agent and paid prior to closing.

7. Borrower further agrees to continue, without interruption, to make timely payments of interest at the rate of six percent (6%) per annum on the outstanding balances of the following promissory notes:

   | | | |
   |---|---|---|
   | a. | Note dated September 16, 2009, in the amount of: | $250,000 |
   | b. | Note dated March 16, 2010, in the amount of: | $250,000 |
   | c. | Note dated July 11, 2011, in the amount of: | $175,000 |
   | d. | Note dated February 28, 2012, in the amount of: | $200,000 |
   | e. | Note dated April 11, 2013, in the amount of: | $100,000 |
   | f. | Note dated November 26, 2014, in the amount of: | $200,000 |
   | g. | Note dated January 8, 2015, in the amount of: | $100,000 |
   | | Total: | $1,100,000 |

8. Borrower further agrees to make principal payments on the above-described Promissory Notes in accordance with the following payment schedule:

   a. $100,000 on or before July 1, 2016;
   b. $100,000 on or before October 1, 2016;
   c. $50,000 on or before January 1, 2017; and
   d. $50,000, in each quarter thereafter until all of the principal and accrued interest, if any, is paid in full.

2

LOAN AGREEMENT CLEAN

9. The Lender shall prorate principal payments when made on a pro-rata basis among the above-listed Promissory Notes, *e.g.*, the first payment of $100,000 computed and prorated as follows: 32.73% (250,000 divided by 1,100,000 = 32.73%) and applied to the $250,000 Promissory Note; 9.1% on the $100,000 Promissory Note; 18.2% on the $200,000 Promissory Note, etc. Any overage or underage attributable to fractional rounding shall be shall be added to and/or deducted from the last $100,000 Promissory Note.

10. Partial Releases. Lender agrees to provide partial releases to Borrower upon the sale of any of the Mortgaged Properties upon payment of one half (1/2) of the net sales proceeds. Additionally, Lender agrees that upon receipt in full of payment of any Promissory Note referred to in Section 7 above, Lender shall release the collateral originally pledged to secure such Promissory Note.

11. Borrower agrees to execute said Mortgages for the Madison property and the Rigrtona property as evidenced by Exhibit "A" and Exhibit "B," respectively.

12. Subordination. Notwithstanding the order of recording, Richard M. Osborne, individually, and as agent for Osair, Inc., Mortgagee and also as the agent for the assignee of the Home Savings and Loan Company ("Home Savings") Mortgage, shall be unconditionally subordinated in priority, postponed and made subject to the Mortgage of Lender.

13. Additional Rights of Lender. Lender may, at any time following an uncured default under this Agreement, take any of the following actions against Borrower, without notice to the Borrower:

   a. Lender shall also have the right to institute any legal proceedings of any kind, including without limitation, an action in mortgage foreclosure;
   b. accept the deed to all or any part of the mortgaged property in lieu of instituting an action of mortgage foreclosure; and
   c. exercise any right to receive or collect rents, if any.

14. This Agreement shall remain in full force and effect until all of the principal and interest obligations are satisfied and paid in full.

15. Future Documents. So long as the Lender shall possess the Mortgage on Borrower's properties, Borrower shall, at any time and from time to time, shall execute any and all further documents or issuances in recordable form that the Lender may reasonably require for carrying out the purpose and intent of this Agreement.

16. Governing Law. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Ohio without regard to principles regarding conflicts of law.

17. Severability. In the event that any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in

3

LOAN AGREEMENT CLEAN

any respect, such invalidity, illegality or unenforceability shall not affect any of the provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal, or enforceable provisions were not contained herein.

18. <u>Successors and Assigns</u>. This Agreement shall be binding on the parties hereto and on their respective successors and assigns.

19. <u>Complete Agreement.</u> This Agreement represents the complete agreement between the parties hereto with respect to the matters contained herein, and no prior understanding or agreement between the parties, whether written or oral, shall be of any effect unless specifically incorporated herein.

20. <u>No Oral Modification.</u> This Agreement shall not be modified or amended, except by written instrument executed by all parties.

21. No delay on the part of the Lender in exercising her rights hereunder or failure to exercise the same shall operate as a waiver of first rights, no notice to or demand on Borrower shall be deemed to be a waiver of any obligations of Borrower or the right of Lender to take other or further action without notice or demand, as provided herein.

22. <u>Attorney Fees</u>. In the event any action or proceedings brought by the Lender against the Borrower for the enforcement of this Agreement, all because of an alleged dispute, breach, or misrepresentation in connection with any of the provisions of this Agreement, the Lender shall be entitled to recover reasonable attorney fees and other costs incurred in that action or proceedings, in addition to any other relief to which she may be entitled.

23. <u>Use of Funds</u>. Borrower represents that he will utilize the funds derived from the sale of the Energy, Inc., common stock (the stock releases from the pledge by the Lender) and Borrower's other funds to liquidate the loan obligations to Home Savings and to purchase by assignment the Home Savings first Mortgage in the approximate amount of $750,000 on The Rigrtona Trust property in Warren County, Pennsylvania. As part of this Agreement, Borrower individually and/or in his capacity as Agent of Assignee, agrees to subordinate and/or assign said Home Savings assigned Mortgage and the Title Insurance Policy to the Lender herein immediately upon receipt of said assignment from Home Savings. Upon the sale of the Energy, Inc., stock, the proceeds for such sale shall be held in escrow with Lake County Title (the "Escrow Agent") (Richard M. Osborne shall execute the requisite documents authorizing the Escrow Agent to sell the stock and receive the sales proceeds) until the closing of the transaction between Home Savings and Borrower. If such closing does not occur by April 1, 2016, then (i) Lender shall be entitled to receive the stock sale proceeds from the Escrow Agent and such sale proceeds shall be applied to satisfy the payments due under Paragraph 8 hereof; (ii) the executed Mortgages shall be deemed null and void and shall not be filed; and (iii) the Escrow Agent shall return the executed Mortgages to Borrower. By way

4

of example if Lender receives $250,000 in proceeds from the stock sale then Borrower will not have to make the payments listed in Paragraph 8 (a), (b), or (c), and would commence making payments under Paragraph 8 (d).

24. Notwithstanding anything contained herein to the contrary, Lender agrees that no monetary default may be declared under this Agreement or any of the documents being executed contemporaneously herewith unless and until Lender delivers written notice of such default to Borrower and Borrower fails to cure such default within sixty (60) days after receipt of such written notice.

25. Lender acknowledges that there are currently delinquent real estate taxes and assessments related to the various properties upon which Lender holds Mortgages. Lender agrees that Borrower's failure to pay said delinquent taxes and assessments or any future taxes and assessments relating to such properties shall not be deemed to be a default under any of the applicable loan documents.

IN WITNESS WHEREOF, Borrower and Lender have, on the date set forth and in acknowledgment hereto, effective as of the date first above written, caused this instrument to be executed and delivered.

LENDER:

_Diane M. Osborne_ (signature)

Diane M. Osborne, Trustee of the
Diane M. Osborne Trust U/T/A
June 22, 2004

BORROWER:

_Richard M. Osborne_ (signature)

Richard M. Osborne

Richard M. Osborne Trust

_Richard M. Osborne Trust_ (signature)

Richard M. Osborne, Trustee of the
Richard M. Osborne Trust U/T/A
January 13, 1995

Nathan Properties, LLC,

By: _Richard M. Osborne_ (signature)

Richard M. Osborne
Its Managing Member

5

LOAN AGREEMENT CLEAN

Mentor Condominiums, LLC

By: _Richard M. Osborne_ (signature)
Richard M. Osborne
Its Managing Member

The Rigrtona Trust

_Richard M. Osborne Trust_ (signature)
Richard M. Osborne, Trustee of
The Rigrtona Trust

6631 Ridge Road, LLC

By: _Richard M. Osborne_ (signature)
Richard M. Osborne
Its Managing Member

STATE OF OHIO )
                       ) ss:
COUNTY OF _Lake_ )

The foregoing instrument was acknowledged before me this 25 day of _February_, 2016, by Richard M. Osborne, individually, and as Trustee of the Richard M. Osborne Trust U/T/A January 13, 1995, and as agent and member of Nathan Properties, LLC., Mentor Condominiums, LLC, and also as Trustee of The Rigrtona Trust, and acknowledged to me that he executed the same as his free act and deed.

_____
Notary Public

JODI LITTMAN TOMASZEWSKI
Notary Public, State of Ohio
No Expiration Date
Recorded in Lake County

STATE OF OHIO )
                       ) ss:
COUNTY OF _Lake_ )

The foregoing instrument was acknowledged before me this 25 day of February, 2016, by Diane M. Osborne, Trustee of the Diane M. Osborne Trust U/T/A June 22, 2004, and acknowledged to me that she executed the same as her free act and deed.

_____
Notary Public

JODI LITTMAN TOMASZEWSKI
Notary Public, State of Ohio
No Expiration Date
Recorded in Lake County

Prepared by:
Joseph T. Svete, Esq. (0001618)
SVETE & McGEE CO., LPA
100 Parker Court #3
Chardon OH 44024
440-286-9571

6

LOAN AGREEMENT CLEAN



**EXHIBIT**

E

## AMENDMENT TO LOAN AGREEMENT

THIS AMENDMENT is entered into on this _25_ day of April, 2016, by and between

DIANE M. OSBORNE (Lender) and RICHARD M. OSBORNE (Borrower).

WHEREAS, Lender and Borrower entered into a Loan Agreement dated the 25th day of

February, 2016, wherein the Lender agreed to surrender possession of pledged certificates of stock

of Energy, Inc., consisting of 35,000 shares of common stock; and

WHEREAS, Borrower has requested the right to sell said 35,000 shares of Energy, Inc., stock

for uses other than agreed upon in the Loan Agreement dated February 25, 2016; and

WHEREAS, Borrower has offered other collateral as replacement collateral for the 35,000

shares of Energy, Inc., stock.

NOW, THEREFORE, in consideration of Ten Dollars and other valuable consideration

($10.00 & ovc), the receipt of which is hereby acknowledged, the parties agree as follows:

1.     Lender hereby agrees to permit the Borrower to sell the 35,000 shares of Energy, Inc.,

stock and to utilize said funds by the Borrower in his sole discretion, conditioned upon the Borrower

providing other collateral in substitution thereof, as more fully described hereinafter.

2.     Borrower has agreed to provide, as substitute collateral, the assignment of the Osair,

Inc., Mortgage Deed of Trust from Rigrtona Trust on the property situated in the Township of

Triumph, County of Warren and State of Pennsylvania dated October 11, 2002, and recorded

October 14, 2002, as evidenced by Exhibit "1" attached hereto and made a part hereof.

3.     The Escrow Agent is hereby directed by the parties herein to file for record the

Assignment attached hereto as Exhibit "1" prior to the release of the pledged stock to Borrower.

-1-

Upon the recording of said Assignment, the Escrow Agent shall notify Borrower that he is authorized to sell the 35,000 shares of Energy, Inc.

4.     The Escrow Agent is directed to file for record, upon receipt of this Amendment to Loan Agreement, the Mortgage on the vacant commercial property located in Madison Township, Lake County, Ohio, PP No. 01-KB-108-A-00-007-0.

5.     Escrow Agent shall continue to hold the Assignment of Mortgage and the Mortgage Deed that were executed by Borrower on February 25, 2016, in connection with the property located in Triumph Township, Warren County, Pennsylvania, until such time as Borrower reaches an agreement with Home Savings & Loan Company. Escrow Agent shall file for record the Osair, Inc., Mortgage Assignment as provided in this Amendment of Loan Agreement.

6.     The parties herein further agree that all of the terms and conditions contained in the Loan Agreement and Escrow Instructions dated February 25, 2016, shall remain in full force and effect except as amended herein.

IN WITNESS WHEREOF, the parties have hereunto signed their names on this _25_ day of _April_ , 2016.

_____
Diane M. Osborne

_____
Richard M. Osborne

OSAIR, INC.

By _____
Richard M. Osborne, President

-2-